UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY \_\_\_\_ \_\_\_ D.C.

2007 FEB 21 AM 9: 09

CLARENCE MADDOX
CLERK, U.S. DIST. CT.
S.D. OF FLA - MIA

EUGENIA RACHOWIN,

           Plaintiff,

v.

NCL (BAHAMAS) LTD. d/b/a NCL and NCL
AMERICA,

           Defendants.

_____/

CASE NO.:

07-20444
CIV-MARTINEZ
MAGISTRATE
BANDSTRA

## COMPLAINT AND DEMAND FOR JURY TRIAL

      COMES NOW the Plaintiff, EUGENIA RACHOWIN, by and through her undersigned counsel, and sues Defendants, NCL (BAHAMAS) LTD. d/b/a NCL (hereby referred to as NCL LTD.) and NCL AMERICA (hereby referred to as "NCL"), and states as follows:

### PARTIES

1.      Plaintiff, EUGENIA RACHOWIN, is a resident of New York.

2.      Defendant, NCL LTD., was and is a foreign corporation authorized to and doing business in Miami-Dade County, Florida.

3.      Defendant, NCL AMERICA, was and is a foreign corporation authorized to and doing business in Miami-Dade County, Florida.

### JURISDICTION AND VENUE

4.      This court has jurisdiction over this matter under 28 U.S.C. § 1332, because the matter in controversy exceeds $75,000.00, exclusive of interest and costs and is between citizens of different states.

5.      This court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which has jurisdiction over any civil case of admiralty or maritime.

## GENERAL ALLEGATIONS

6.      At all times material hereto, Defendants, NCL LTD. and NCL, had a contract with Plaintiff, EUGENIA RACHOWIN, requiring that all suits be maintained in the United States District Court in the Southern District of Florida.

7.      At all times material hereto, Defendants, NCL LTD. and NCL, by and through their agents and employees, were and are the owners and had control and supervision over the vessel named the "Norwegian Dawn."

## COUNT I
## NEGLIGENCE AGAINST NCL LTD.

8.      On or about November 9, 2005, Plaintiff, EUGENIA RACHOWIN, was a lawful paying passenger on the Norwegian Dawn.

9.      At the above-stated time and place, Defendant, NCL LTD., by and through their agents and employees, had a duty to exercise reasonable care under the circumstances and maintain and/or create a safe environment on the Norwegian Dawn for the general public, which included the Plaintiff, EUGENIA RACHOWIN.

10.      At the above-stated time and place, Defendants had a duty to exercise reasonable care under the circumstances by properly maintaining the steps and/or warning Plaintiff, EUGENIA RACHOWIN, of the conditions and risk of injury due to the slippery material of the steps leading into the Jacuzzi.

11.      On or about November 9, 2005, Defendant, NCL LTD. by and through their agents and employees, breached their duty of care by creating and permitting a dangerous and hazardous condition to exist on the Norwegian Dawn, in the spa visited by Plaintiff, EUGENIA RACHOWIN, by having the steps leading into the Jacuzzi/indoor pool not properly designed and/or maintained to not be slippery and Defendant failed to provide notice or warning with regard to the slippery condition of the steps, which caused Plaintiff, EUGENIA RACHOWIN, to slip and fall.

12.      The dangerous and negligent condition of the steps leading into the Jacuzzi/indoor pool in the Spa was created by or known to Defendant, NCL, LTD., had existed for a sufficient

length of time so that Defendants knew or should have known of the condition and corrected it, warned of it, or otherwise taken precautions to make the Jacuzzi/indoor pool safe for its intended purpose and use.

13.     As a direct and proximate result of the negligence of Defendant, NCL, LTD., Plaintiff, EUGENIA RACHOWIN, was caused to fall and injure herself on the steps to the Jacuzzi/indoor pool of the Spa.

14.     As a direct and proximate result of the negligence of Defendant, NCL, LTD., Plaintiff, EUGENIA RACHOWIN, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment.  The losses are either permanent or continuing, and Plaintiff, EUGENIA RACHOWIN, will continue to suffer the losses in the future.

WHEREFORE, Plaintiff, EUGENIA RACHOWIN, demands judgment for compensatory damages, costs, and prejudgment interest against Defendant, NCL, LTD., and demands a trial by jury of all issues triable as a matter of right by jury.

## COUNT II
## NEGLIGENCE AGAINST NCL

Plaintiff realleges paragraphs 1 through 7 as if fully set forth herein, and further states:

15.     On or about November 9, 2005, Plaintiff, EUGENIA RACHOWIN, was a lawful paying passenger on the Norwegian Dawn.

16.     At the above-stated time and place, Defendant, NCL, by and through their agents and employees, had a duty to exercise reasonable care under the circumstances and maintain and/or create a safe environment on the Norwegian Dawn for the general public, which included the Plaintiff, EUGENIA RACHOWIN.

17.     At the above-stated time and place, Defendant had a duty to exercise reasonable care under the circumstances by properly maintaining the steps and/or warning Plaintiff, EUGENIA RACHOWIN, of the conditions and risk of injury due to the slippery material of the steps leading into the Jacuzzi.

Steven R. Simon, P.A. * SunTrust International Center * One S.E. Third Avenue, #2110 * Miami, FL 33131
Phone (305) 358-6033  *  Fax (305) 358-7822

3

18.     On or about November 9, 2005, Defendant, NCL, by and through their agents and employees, breached their duty of care by creating and permitting a dangerous and hazardous condition to exist on the Norwegian Dawn, in the spa visited by Plaintiff, EUGENE RACHOWIN, by having the steps leading into the Jacuzzi/indoor pool not properly designed and/or maintained to not be slippery and Defendant failed to provide notice or warning with regard to the slippery condition of the steps, which caused Plaintiff, EUGENE RACHOWIN, to slip and fall.

19.     The dangerous and negligent condition of the steps leading into the Jacuzzi/indoor pool in the Spa was created by or known to Defendant, NCL, had existed for a sufficient length of time so that Defendant knew or should have known of the condition and corrected it, warned of it, or otherwise taken precautions to make the Jacuzzi/indoor pool safe for its intended purpose and use.

20.     As a direct and proximate result of the negligence of Defendant, NCL, Plaintiff, EUGENE RACHOWIN, was caused to fall and injure herself on the steps to the Jacuzzi/indoor pool of the Spa.

21.     As a direct and proximate result of the negligence of Defendant, NCL, Plaintiff, EUGENE RACHOWIN, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment. The losses are either permanent or continuing, and Plaintiff, EUGENIA RACHOWIN, will continue to suffer the losses in the future.

Steven R. Simon, P.A. * SunTrust International Center * One S.E. Third Avenue, #2110 * Miami, FL 33131
Phone (305) 358-6033  *  Fax (305) 358-7822

4

WHEREFORE, Plaintiff, EUGENE RACHOWIN, demands judgment for compensatory damages, costs and prejudgment interest against Defendant, NCL, and demands a trial by jury of all issues triable as a matter of right by jury.

Dated this 20th day of February, 2007.

By: _____

Steven R. Simon
Florida Bar No. 501808
Steven R. Simon, P.A.
Suntrust International Center
One S.E. 3rd Avenue, Suite 2110
Miami, FL 33131
(305) 358-6033
(305) 358-7822 (fax)
*Counsel for Plaintiff*



# NORWEGIAN CRUISE LINE

7665 Corporate Center Drive
Miami, Florida 33126

**Passenger Ticket Contract**

Passenger Copy

NORWEGIAN DAWN    SAILING: Oct 30, 2005
YOUR CRUISE-MAIL ADDRESS: emachowin4606@dawn.cruisemail.net

RESERVATION: 12358723

EMBARKATION/DEST: NYC/NYC

4606   APT   FREESTYLE

ADULTS: 2

| | | | |
|---|---|---|---|
| EVGENIA RACHOWIN | US | INS | PP |
| JACOB RACHOWIN | US | N | PP |
| | | N | PP |

TAXES & FEES:    USD 246.84

CLIENT ID
124487885
124487729

IF YOU ARE A MEMBER OF OUR PAST GUEST CLUB, LATITUDES, AND THIS TICKET INDICATES YOU ARE A TYPE = NPP, PLEASE CALL NCL AT 1-800-343-0098 BEFORE SAILING TO UPDATE YOUR LATITUDES STATUS.

EVGENIA RACHOWIN
319 E 24TH ST APT 2A
APT 2A
NEW YORK, NY 100104038 US

EVGENIA
212-683-6485

FARES AS AGREED

Not Good for Passage

04/03 Ship's Registry: Bahamas

7.  The passenger states a full understanding of the nature and character of the vessel and assumes all risks of travel, transportation and boarding of passengers and baggage. The passenger assumes the risk of and releases Carrier from liability for any injury, loss or damage whatsoever arising from, caused by or in the judgment of the Captain or Master rendered necessary or advisable by reason of war or acts of God or public enemies; force majeure; arrests; restraints of governments or their departments or under color of law; riots or peoples; piracy; war; revolution; saturation; terrorist actions or threats; hijacking; bombing; threatened or actual rebellion, insurrection, or civil strife; fire, explosion, collision, stranding or grounding; weather conditions; docking or anchoring difficulty; congestion; perils of the sea; rivers, canals, locks or other waters; perils of navigation of any kind; lack of water or passageway in canals; theft; accident to or from machinery, boilers, or latent defects (even though existing at embarkation or commencement of voyage); desertion or revolt of crew; seizure of ship by legal process; strike, lockout or labor disturbances (regardless whether such strike, lockout or labor disturbance results from a dispute between the Carrier and its employees or any other parties); or from losses of any kind beyond the Carrier's control. Under any such circumstances the cruise may be altered, shortened, lengthened, or cancelled in whole or part without liability to the Carrier for a refund or otherwise.

Except as otherwise specified above, if the vessel does not sail on or about the scheduled or advertised date for any reason whatsoever, including fault of Carrier, Carrier shall have liberty to substitute any other vessel or means of transportation, regardless whether owned or operated by Carrier, and to re-berth passengers thereon, at Carrier's option, to refund the passage money paid or a pro rata portion thereof without further liability for damages or losses of any kind whatsoever.

Carrier, in its sole discretion, shall have full liberty to proceed without pilots and tow and to assist vessels in all situations; to deviate from the direct or customary course for any purpose, including, without limitation, in the interest of passengers or of the vessel, or to save life or property; to put in at any unscheduled or unadvertised port; to cancel any scheduled call at any port for any reason and at any time before the sailing or after the sailing of the vessel; to omit, advance or delay landing at any scheduled or advertised ports; to substitute another vessel or port of call without prior notice and without incurring any liability to the embarkation or to any port previously visited if Carrier shall deem prudent to do so for any reason, to substitute another vessel or port of call without prior notice and without incurring any liability to the passengers on account thereof for any loss, damage or delay whatsoever, whether consequential or otherwise.

Carrier shall have the absolute right, without liability for compensation to the passenger of any kind, to comply with governmental orders, recommendations or directions, including but not limited to those pertaining to health, security, immigration, customs or safety. In the case of quarantine, each passenger must bear all risks, losses and expenses caused thereby and will be charged for maintenance, provided day-by-day, if maintained on board the vessel for such period of quarantine. Passenger assumes all risks and losses occasioned by delay or deviation howsoever arising, from connected with embarkation or debarkation of passengers and/or baggage and costs of transfer between vessel and shore as a result of the circumstances enumerated in this paragraph must be borne by the passenger.

EXHIBIT
1

tabbies

**IMPORTANT NOTICE:** Passengers are advised to carefully read the terms and conditions of the Passenger Ticket Contract set forth below which affect your legal rights and are binding. Acceptance or use of this Contract shall constitute the agreement of Passenger to these Terms and Conditions.

## NORWEGIAN CRUISE LINE
### Passenger Ticket Contract

1. For the purpose of this Contract the term "Carrier" shall include NCL (Bahamas) Ltd. d/b/a NCL and/or NCL America, its designees, assigns, successors or affiliates, the named vessel, any substituted vessel, and its or their tenders, launches and related facilities. The rights, defenses, immunities and limitations of liability set forth herein shall inure to the benefit of the Carrier. The term "Passenger" shall include any person purchasing, accepting or using this Contract, on behalf of themselves or others in their care, including any accompanying minors, and any of their heirs, relatives, successors, assigns or representatives, regardless whether signed by or on his behalf. The fare includes only the transportation as specified herein, full board, and ordinary ship's food, but does not include spirits, wines, beer, sodas or mineral waters, nor charges for other incidental or personal services. The fare does not include government taxes and/or fees which may be imposed by U.S. and/or foreign governmental or quasi-governmental authorities including U.S. Customs fees, head taxes, inspection fees, or taxes incurred as part of a land tour. Immigration and naturalization fees and Internal Revenue Service fees. This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier's advertisement, notices, brochures or other literature and all promises and agreements made or claimed to have been made by anyone in connection with the cruise to the passenger or anyone representing him.

2. This ticket and Contract is valid only for the voyage specified on the preceding pages and for the person(s) named and cannot be transferred without Carrier's written consent. The fare paid shall be considered fully earned at the time of payment, or if not previously paid, then at the time payment is due or upon embarkation, whichever is sooner. Carrier shall not be liable to make any refund to passenger in respect of lost tickets or in respect of tickets wholly or partly not used by a passenger except as expressly set forth hereby, any statute or other governmental regulation to the contrary notwithstanding.

3. Each passenger agrees to abide by all rules of the Carrier and its officers at all times and failure to do so may subject the passenger to disembarkation without any liability on the part of the Carrier for a refund or any other related expenses or losses to the passenger or any accompanying passenger whatsoever. A passenger under 21 years of age must be accompanied in the same or connecting stateroom by a passenger 21 years or older who expressly agrees to be responsible for the under 21 passenger throughout the cruise. This responsibility includes, but is not limited to, preventing the purchase or consumption of alcohol and preventing the violation of any ship rules. If the accompanying adult is not a spouse, parent or legal guardian, a notarized parental/guardian consent letter that authorizes the minor's travel and further authorizes medical treatment in case of an emergency, or certified copy of the marriage certificate, must be delivered to an NCL representative at the pier. Failure to produce such documentation at embarkation may result in boarding being denied with no refund provided. Passengers must be 21 years or older to purchase or consume alcohol or to engage in any form of gambling on the vessel.

4. Passenger is not allowed to bring on board the vessel without the previous written permission of the Carrier any intoxicating liquors or beverages, firearms, firearms, weapons of any kind, ammunition, to bring such animal and goods of a dangerous nature, nor animals of any kind, except service or guide animals, provided the passenger notifies Carrier prior to the cruise of his intention explosive substances or any goods of a dangerous nature, nor animals of any kind, except service or guide animals, provided the passenger notifies Carrier prior to the cruise of his intention to bring such animal and agrees to accept sole responsibility for any expense, damage or loss associated with or caused by such animal.

5. Unless Passenger obtains prior written permission from Carrier, Passenger shall not exhibit other passengers, Carrier's employees, personnel or agents during the voyage with respect to any professional, business or commercial activity, for profit or otherwise. Failure to adhere to this prohibition may result in ejection from the vessel without liability of the Carrier to refund any portion of the fare or for any incidental costs whatsoever.

6. Carrier's responsibility shall not extend beyond the limitation of liability to which Carrier is entitled under applicable law. No undertaking, guaranty or warranty is given or shall be implied as to the seaworthiness, fitness, or condition of the vessel or any food, drink, medicine, or provisions supplied on board the vessel. In no event shall Carrier be liable for any incident arising outside the passenger areas of the vessel or the vessel itself and holding, but not limited to those occurring ashore, on tenders not owned by the vessel, normal or resulting from equipment not a part of the vessel, or upon docks or piers.

Case 1:07-cv-20444-JEM   Document 1   Entered on FLSD Docket 02/22/2007   Page 8 of 10

6. (c) Wherever the term "baggage" is used herein, it shall mean only suitcase, valises, satchels, bags, hangers or bundles and their contents consisting of such personal wearing apparel, articles of personal adornment, toilet articles and similar personal effects as are necessary and appropriate for the purposes of the journey, including all other property of the passenger not in a container. No tools of trade, household goods, computers, medical instruments, radios, televisions, electronic equipment, liquors, fragile items, bullion, jewelry, precious stones, passenger's baggage, except under and subject to the terms of a special written contract entered into with the Carrier before embarkation upon application of the passenger. The passenger hereby warrants that no such articles have been carried on the vessel or are contained in any receptacle or container presented to the Carrier as baggage. Carrier shall not be liable for any loss of or damage to any of the above listed items, or perishable items, dentures, optical devices (including contact lenses), medications, cameras, recreational and/or sporting equipment, cash, securities or other negotiable instruments under any circumstances whatsoever, whether carried within the passenger's baggage or otherwise.

(b) It is stipulated that the aggregate value of all the passenger's baggage and any other property under this ticket does not exceed $100.00 and any liability of the Carrier or the vessel for any cause whatsoever with respect to said baggage shall not exceed such sum unless the passenger shall in writing specify its true value and pay to the Carrier before embarkation 5% of the excess of such value, in which case the Carrier's liability, if any, shall be limited to the actual damage sustained up to, but not exceeding such specified value.

(c) All disclaimers and limitations of liability contained herein shall apply to all valuables stored or accepted for storage by Carrier, including valuables stored with the Carrier in safety deposit boxes or security envelopes. Carrier cannot accept responsibility for and in no event shall be liable for loss or damage of valuables or other articles left in cabins, and in no event shall Carrier be liable for loss or damage to property of any kind not shown by the passenger to have occurred while in the Carrier's actual custody, or for normal wear and tear.

(d) Loss of or damage to baggage during loading or disembarking must be reported by the passenger to Carrier's personnel prior to debarking the U.S. Customs area; Carrier shall not be responsible for any such loss or damage which is not so reported. Liability, if any, for loss or damage to baggage occurring elsewhere than on board the vessel in connection with air, car, rail, motor coach, ground transfers, porters, stevedores and/or hotels shall rest solely with the person or entity providing such services and passenger agrees that Carrier does not guarantee the performance of such services and shall not be liable in any respect or capacity for any such loss or damage. Carrier has an absolute right to transfer passenger and/or his baggage to other carriers, whether by water, rail or air, to or forward the ultimate destination. In the event such substituted passage is for the convenience of the Carrier, it shall be at Carrier's cost. Otherwise, it shall be at the cost of passenger.

12. Carrier disclaims all liability to Passenger for damages for emotional distress, mental suffering or psychological injury of any kind not resulting from a physical injury to that passenger, nor from that passenger having been at risk of actual physical injury, nor intentionally inflicted by the Carrier. On cruises that neither embark, disembark nor call at any U.S. port, Carrier shall be entitled to any and all limitations and immunities provided under the Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1974, as amended the Protocol to the Convention Relating to the Carriage of Passengers and Their Luggage by Sea of 1976, which limit Carrier's liability for death of or personal injury of a passenger to no more than 46,666 Special Drawing Rights as defined therein (approximately $67,000 U.S. which fluctuates depending upon the daily exchange rate printed in the Wall Street Journal). In addition, and on all other cruises, Carrier and the vessel shall have the benefit of any statutory limitation of liability or exoneration of liability available in the applicable forum, or under any applicable national or international law, including but not limited to Title 46 of the United States Code, Sections 181 through 186.

13. Upon embarkation, the Passenger shall have in his possession and assumes all responsibility for obtaining all visas, passports, certified birth certificates, travel and health documents required by any governmental authority, and if he fails to do so Carrier shall bare no further obligation to transport or to furnish transportation to the passenger. Passengers are advised to consult their travel agent or the appropriate governmental authority concerning required documentation for travel. Passenger shall indemnify Carrier for all penalties, fines, charges, losses and expenses imposed upon or incurred by Carrier due to the passenger's failure to have proper documentation or otherwise comply with applicable laws or regulations of any kind, or imposed by governmental authorities. Any stamps on tickets, customs, excise or other taxes or fines on passenger or Carrier resulting from passenger's conduct, embarkation expenses, and all expenses of such a nature are to be paid by passenger. Carrier shall not be liable to refund passenger's fare or for any other damages or expenses if passenger is prohibited from boarding due to lack of proper documents.

14. Passenger will not be liable to pay nor entitled to receive any general average contribution in respect to property taken with them on the vessel.

15. Should any provision of this Contract be deemed invalid for any reason, said provision is deemed to be severed from this Contract and shall be of no effect, but all remaining provisions herein shall remain in full force and effect.

16. The passenger shall be liable to and shall reimburse Carrier for all damages to the vessel and its furnishings and any equipment or property of the Carrier caused directly or indirectly, in whole or in part, by any act or omission of the passenger, whether willful or negligent. The passenger shall further indemnify the Carrier and each and all of their agents or servants against all liability whatsoever arising from any personal injury, death or damage or loss whatsoever caused directly or indirectly, in whole or in part, by any willful or negligent act or omission on the part of the passenger.

17. The passenger agrees that any travel agent utilized by passenger in connection with the purchase of the cruise or issuance of this Contract, are for any related or incidental air or ground transportation or excursions, is solely passenger's agent and passenger shall remain liable to Carrier for the full applicable cruise fare. Carrier shall not be responsible for any representation, inadvertency or other conduct of a travel agent, including but not limited to such agent's failure to remit any portion of the cruise fare to Carrier, or to remit any refund to the passenger. Passenger agrees that receipt of any refunds or notices by passenger's travel agent, including this Contract, shall constitute receipt by passenger.

9. In making any arrangements for the transportation of any passenger or his or her baggage by any other carrier, connecting carrier or otherwise; or for shore accommodations, excursions, wheeling, amusement or entertainment, or for any other service or facility whatsoever; or for any service provided by a bargee, physician, barber, hairdresser, manicurist, or any individual or entity providing personal services of any kind whatsoever for any passenger; or if the vessel requests emergency medical transportation or emergency medical services or facilities, and that the same are provided by independent contractors who work directly for the convenience of the passenger, does not act on behalf of or supervise the parties or persons who own, furnish or operate such services or facilities, and that the same are provided by independent contractors who work directly for the passenger and are subject to such terms, if any, appearing in the tickets, vouchers the Carrier. Each such person, party or entity shall be entitled to make a proper charge for any service performed whatsoever as employees, servants or agents of but not limited to physicians, surgeons, hospitals, medication, diagnostic facilities, or ambulance evacuation or ground ambulance, shall be the sole responsibility of the passenger and the cost of such service, including, hereby agrees to reimburse and indemnify Carrier for any funds advanced on account of any such charges. Carrier assumes no responsibility for and guarantees the performance of any such person, party, commence service or facility, or those under their orders or assisting them with respect to any diagnostic, medication, treatment, advice, services or care of any kind given to any passenger. Carrier shall not be liable for the act, neglect, default or omission of any party in respect to any tender, matters or things other than as set forth herein.

10. No suit, including without limitation suit brought in rem and in personam, shall be maintained against the Carrier for personal injury or physical injury, illness or death of passenger unless written notice of the claim with full particulars be delivered to the Carrier within one (1) year from the day when such injury, illness or death occurred; and in no event shall any suit be maintainable unless commenced within one (1) year from the day when the injury, illness or death occurred, notwithstanding any provision of law of any state or country to the contrary. No suit involving any other matter or claim, legal theory, or cause of action whatsoever, shall be maintainable against the Carrier, either for loss or damage to baggage, or for delay, detention or otherwise, shall be maintainable against the Carrier, either for loss or notwithstanding any provision of law of any state or country to the contrary. Passenger agrees that no claim or cause of action arose, delivered to the Carrier within thirty (30) days of termination of the passenger's scheduled cruise and suit with full particulars is personal capacity and not as member of a class action or other representative capacity.

11. Carrier reserves the right, without incurring liability of any kind, to refuse or reroute passage to, or decline to transport, any passenger who in Carrier's sole judgment may be refused admission into a port of landing or into the country of destination, or may be suffering from contagious disease, or for any other cause may endanger themselves or become a nuisance to others. Any passenger who is refused passage or otherwise denied any contracted benefit or service under this paragraph shall not be entitled to receive any compensation whatsoever and shall become liable for any resulting expenses incurred by the Carrier.

18. Carrier reserves the right to increase fares without prior notice.

19. Carrier shall not be liable for any injuries or damages which occur while participating in athletic or recreational activities aboard the vessel or onshore at any port of call, including, but not limited to, passenger participation in swimming programs, exercise programs or passenger usage of any paddle ball, gymnasium, jogging, swimming, diving, health club and sound facilities. By utilizing said facilities, passenger agrees to assume all risks arising therefrom and does hereby fully release and discharge Carrier from any and all claims, demands, damages, causes of action, present or future, whether the same be known, anticipated or unanticipated, resulting from or arising out of passenger's use or intended use of said facilities.

20. Passenger acknowledges that medical care while on a cruise ship may be limited or delayed and the ship may travel to destinations where medical care is unavailable. Therefore, every passenger warrants that he and thus far whom he is responsible for are fit to travel. Any condition of the passenger that may require special attention or treatment that may limit must be reported to the Carrier when reservation is requested. A medical certificate certifying fitness for travel may be required of any passenger and any kind must be Regulations may cause difficulty for mobility-impaired passengers (travel without arrival travel without arrival travel without arrival travel without arrival travel without arrival kind. Carrier reserves the right to both/adult standard size wheelchair (22 1/2 inches wide), on the vessel can be used for emergency use only. Carrier reserves the right to refuse or revoke passage to anyone who falls to notify Carrier of any physical or emotional condition which may require special care or accommodation, or who is, in the sole judgment of Carrier, as a result of such condition, unfit to travel, or who may require care or attention beyond that which Carrier can provide. Passengers requiring the use of a wheelchair must provide their own such condition be reported to the Carrier when reservation is requested. Carrier shall have no liability to the passenger whatsoever. Passengers must be able to participate in certain activities or programs either aboard the vessel or onshore at ports of call if on a reservation it is not cancelled in full. Gateway charges for all passengers on the reservation. Cancellation fees for air, land and other add-ons are charged only if the passenger.

21. Cancellation fees for cruise, air, land and other charges apply to all passengers on the reservation. Cancellation fees for air, land and other add-ons charges will apply even if the telephoned to our Reservations Department. Depending on when the cruise is cancelled, cancellation charges will be assessed per the Terms and Conditions of the cruise brochure. Air tickets issued by our Air/Sea Department for passengers on our Air/Sea Programs are refundable only to Carrier. Group Cancellation charges are subject to change without notice. Air tickets issued by our Air/Sea Department for passengers on our Air/Sea Programs are refundable only to Carrier. Group passenger problem may differ and payment and cancellation charges may differ by promotion. Refer to your travel agent.

22. Except as otherwise specified herein, this contract shall be governed in all respects by the General Maritime Law of the United States and, only when not inconsistent with the provisions of this Contract or U.S. maritime law, the laws of the State of Florida. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from, related to, or in connection with this Contract or the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before the United States District Court for Dade County, Florida, U.S.A., to the exclusion of the Courts of any other country, state, city or county.

23. Passenger consent to Carrier's use and display of passenger's likeness in any video, photograph or other depiction for any purpose, commercial or otherwise, without compensation or liability of any kind.

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

## 07-20444

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

EUGENIA RACHOWIN

**DEFENDANTS**

NCL (BAHAMAS) LTD d/b/a NCL and NCL AMERICA

## CIV-MARTINEZ

## MAGISTRATE BANDSTRA

**(b)** County of Residence of First Listed Plaintiff   NEW YORK, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

STEVEN R. SIMON, ESQ.   (305) 358-6033
SUNTRUST INTL CENTER
ONE S.E. 3RD AVE, SUITE 2110, MIAMI FL 33131

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☑ DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☑ Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

DADE-07-20444-CV-MARTINEZ-BANDSTRA

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☑ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury |  | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other |  |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights |  |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition |  |  | ☐ 950 Constitutionality of |
|  | Other |  |  |  | State Statutes |
|  | ☑ 440 Other Civil Rights |  |  |  |  |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC 1332, 28 USC 1333

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE  02·20·07

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 9557 2F   AMOUNT $ 350.00   APPLYING IFP _____

02/22/0-